## Lampkins v. Erie Insurance Co.

*Barry S. Yoches*, for plaintiff.
*A. Harold Datz*, for defendant.

WILSON, *J.*, May 9, 1982—This is an action in assumpsit which was brought by Mildred Lampkins against her late husband's no-fault automobile insurance carrier. Leroy Lampkins, the deceased, died August 24, 1978. On August 22, 1978 Mr. Lampkins was involved in an automobile accident. Mrs. Lampkins asserts that her husband's death was caused in part by the accident. The insurance carrier refused to pay arguing that the death was not related to the accident. Death was caused by ventricular fibrillation.

The matter came before the court and was submitted for decision on the basis of depositions with two stipulations. First, Mr. Lampkins was employed and earned more than $15,000 a year. Second, his funeral expenses exceeded $1,500. At the time of his death he was 55 years old.

On August 22, 1978, Leroy Lampkins had a relatively minor automobile accident. Upon his return home his wife noticed that he was short of breath, nervous and complained of indigestion and pain in his back. Mrs. Lampkins had not seen these symptoms in her husband before that day. According to his wife he did not sleep that night. The next day he went to work. After a full day of work, he returned home with the same problems with breathing and pain. His job as a supervisor did not involve heavy

lifting. His wife had visited him at work several times in the past and in her deposition testified that she knew from those visits that he did not have to lift heavy objects. On August 24, 1978 Mr. Lampkins went to work as usual but returned home early in the day. His wife said that he seemed "slow" or "drained" in his movements. He did not eat dinner because of his complaint about his indigestion. After dinner he and his son carried an electric rotor into the basement of the home. The son testified that it was heavy and it took the two of them to carry it. Mr. Lampkins snaked out a drain in the basement. When he finished he said to his son, "Well that's it", as he stood he grabbed his chest and called his wife's name. He collapsed to the floor. The rescue squad was called. Mr. Lampkins was pronounced dead on arrival at Germantown Hospital.

Plaintiff's medical expert testifying from the records of the hospital and the autopsy, found arteriosclerotic disease and a prior myocardial infarct that had healed. He testified that a person with Mr. Lampkins condition would have some pain which could be described as indigestion, pain in the shoulder or even a toothache, if he were experiencing cardiac insufficiency. It was his medical opinion that death was caused by ventricular fibrillation, which was caused by cardiac insufficiency. The accident and its stress set up the cardiac insufficiency which continued to the crisis point when the physical exertion of the plumbing work caused an increased demand for blood to the heart which was already short. That strain was too great and the heart began to "quiver" causing death.

The question of the liability of the insurance company involves around an interpretation of the Pennsylvania No-fault Motor Vehicle Insurance Act, Act

of July 19, 1974, P.L. 489, No. 176, 40 Pa.C.S.A. §1009.101 et seq. The act uses the words "suffers injury arising out of the maintenance or use of a motor vehicle". The question presented to the court to decide is whether under the facts the death of the decedent was caused by an injury arising out of the use of a motor vehicle. There is no question as to whether the actual use of the vehicle was covered by the act. It was. The problem is whether the injury caused the death.

Plaintiff relies on the reasoning in Erie Insurance Exchange v. Eienhuth, 305 Pa. Super. 571, 451 A.2d 1024 (1982). In that case the court holds that arising out of means causally connected but not proximately caused by. That case however deals with the issue of the relationship of the injury to the use of the vehicle not the relationship of the injury to the death as here.

Our courts have defined the words "arising out of" as they are used in the insurance industry. In Manufacturers Casualty Insurance Company v. Goodville Mutual Casualty Company, 403 Pa. 603, 170 A.2d 571 (1961), the Supreme Court rejected the argument of the lower court that those words mean proximately caused by. At page 606, the court said ". . . the court below agreed, holding that 'arising out of' must be construed to mean 'proximately caused by'. However, we do not so interpret the words 'arising out of' . . ." That case involved the interpretation of the language of an insurance policy and was before the passage of the present No-fault Law. Our legislature adopted those very same words in drafting the statute. They could just as easily used proximately caused by. The act was passed primarily to compensate the victims of injuries suffered from the use of motor vehicles. By adopting the broad language rather than the narrow lan-

guage, the legislature intended that victims and their families need not prove the proximate cause of the injury, but rather that it was causally connected with the motor vehicle use.

This court, therefore, finds that the words arising out of means causally connected with. Thus where the death can be connected to the accidental use of an automobile plaintiff is entitled to recover. Plaintiff need not show that the accident was the sole cause of death.

Defendant presents the deposition of its expert, Louis A. Soloff, M.D. In his testimony Doctor Soloff agrees that the medical opinion of the plaintiff is possible. He testified however that medical science does not know why a person develops ventricular fibrillation and suddenly dies. The question to the court, however, is not whether medical science has the answer to why but rather is that what happened to the plaintiff and was it related to the accident.

The opinion of Doctor Soloff discounts the impact of the accident. For example he believed that working on the drain was evidence that Mr. Lampkins was "feeling fairly comfortable". That does not agree with the facts as testified to by the wife. It is inconsistent with Mr. Lampkins refusal to eat, his sweating and the "slow" nature of his behavior. When asked to consider the facts as presented by the wife Doctor Soloff refused to do so. He adhered doggedly to his opinion that only the plumbing work caused the death. The court from careful review of the deposition can only interpret that position as his attempt to avoid reality. He was afraid that if he considered all of the facts he would be forced to agree that Mr. Lampkin's death was causally related to the accident. Yet despite his dogged denials, he agreed that indigestion and pain are symptoms of cardiac insufficiency. He further testified on cross-

examination that cardiac insufficiency would not leave dead tissue for the autopsy to find. That was consistent with the medical examiner's finding in this case. On cross-examination, he agreed that the condition described by the wife was consistent with cardiac insufficiency. He said, "If we accept the wife's opinion its quite possible that he had an episode of angina pectoris". While he tried to avoid that description his "angina pectoris" was defined the same as Doctor Victor A. DiGilio's "cardiac insufficiency", that being pain in the chest or stomach area caused by a lack of blood to the heart.

Doctor Soloff testified that the most important contributing factor to death was the heart disease. It was his opinion that a person in that condition should not have engaged in the plumbing work. He believes that the work brought on the ventricular fibrillation and while it could have been without cause, if he had to pick one (discounting of course the wife's description of decedent's condition) he would pick the plumbing work as the cause.

The burden of proof falls on plaintiff. They must prove by the preponderance of the evidence that the death was causally related to the accident. Having viewed all of the evidence in a light most favorable to plaintiff this court is not convinced that the death was so linked. It would appear that even if a medical report could be produced showing an injury of Mr. Lampkins on August 23 it would not indicate that death was imminent nor that such death was a natural and probable result of the injury. The court must either speculate or create its own evidence to find for plaintiff.

Based on the evidence and the law the court is of the opinion that the death was caused by a series of factors. Mr. Lampkin was a sick man with heart disease which he had lived with for some time without

proper medical treatment. The stress of the accident put a demand on his body for blood to the heart which his body could not supply. He suffered from cardiac insufficiency with symptoms of pain in the lower chest area and shortness of breath constantly. On the 24th he was weakened from this condition and returned home from work early. With utter disregard for his health, he began a home repair plumbing project. The physical strain of that job was more than his heart could bear. He suffered an immediate heart attack. His condition predates the accident, the events leading to his death began well before the accident. It is true that many events might have caused the sudden attack that led to his death, however the evidence presented to this court does not yield up the conclusion that the plaintiff seeks. Simply put she has failed to meet her burden of proof.

Defendant, in the pleadings, raised the defense of statute of limitations. A review of the law, reveals that No-fault claims for death and survivor benefits have several different limitations, see Act of July 19, 1974, No. 176, 40 Pa.C.S.A. §1009.106(c)(2). Neither party presented any evidence to show that the action was barred. The court notes that the law varies the period based on the filing of claims and the payment thereof, information which was in the possession of the defendant. Without that evidence the court could only speculate as to the period of the limitation. Since the suit was filed well within several of the limitation periods there could be no prima facie showing of the bar. The court dismisses that argument.

Accordingly this court makes this finding in favor of defendant and against plaintiff.